UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| ANDREW N. MATTHEWS, | : |
| | : |
| Plaintiff, | : |
| | : |
| v. | : No. 3:10cv325 (MRK) |
| | : |
| STATE OF CONNECTICUT, | : |
| DEPARTMENT OF PUBLIC SAFETY, | : |
| LEONARD C. BOYLE, | : |
| | : |
| Defendants. | : |

## RULING AND ORDER

In this case, Connecticut State Police Sergeant Andrew N. Matthews alleges that his employer unlawfully retaliated against him for speaking out against a variety of misconduct by his fellow officers and against his employer's attempts to cover up that misconduct. Defendants are the State of Connecticut; Mr. Matthews' employer, the Department of Public Safety; and Leonard C. Boyle, the Department's former Commissioner. Pending before the Court is Defendants' Renewed Motion to Dismiss [doc. # 33] for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the *Federal Rules of Civil Procedure*. For the reasons set forth below, Defendants' Motion to Dismiss [doc. # 33] is GRANTED.

**I.**

As it must, the Court accepts the factual allegations in Mr. Matthews' Second Amended Complaint [doc. # 29] as true, and draws all reasonable inferences in Mr. Matthews' favor. *See Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009). Mr. Matthews joined the Department of Public Safety in January 1998. In July 2004, he was promoted to Sergeant and transferred to the Internal Affairs Division. While Mr. Matthews was a member of the Internal Affairs Division, he

learned that Department management had a practice of covering up a variety of misconduct by state police officers, including alcohol abuse, drunk driving, sexual abuse, and domestic violence. Mr. Matthews complained about the misconduct and the cover-ups to others in the Department.

Mr. Matthews first complained to the Connecticut Attorney General's Office about the misconduct and cover-ups in June 2005. Mr. Boyle, who was at that time the Department's Commissioner, knew that Mr. Matthews contacted the Attorney General's Office. On June 16, 2005, Mr. Boyle authorized a meeting to request that Mr. Matthews allow the Department to handle his complaint internally. Mr. Matthews refused and sent a letter to Mr. Boyle informing him that he intended to file a formal retaliation complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO").

On July 7, 2005, Mr. Boyle authorized Mr. Matthews' transfer from the Internal Affairs Division to the newly-created Risk Management Unit. Although the Risk Management Unit was located in the Department's Professional Standards building in Meriden, Mr. Boyle assigned Mr. Matthews to remain in a cubicle at the Department's Middletown Headquarters. Mr. Boyle later changed the Department's table of organization to make it appear that Mr. Matthews' transfer to the Risk Management Unit was non-disciplinary.

Mr. Matthews contacted the Attorney General's Office for a second time in August 2005, and on August 22, 2005, he filed a grievance with his union about his transfer to the Risk Management Unit. On September 7, 2005, Mr. Boyle authorized the Department to issue a negative Personnel Evaluation Report regarding Mr. Matthews' performance as a member of the Internal Affairs Division. Mr. Matthews received the lowest performance rating of all the members of the Internal Affairs Division, which was not consistent with his other performance ratings. For example, on

September 8, 2005, Mr. Matthews received a "Superior" rating for his performance as a member of the Risk Management Unit.

On September 21, 2005, an officer acting under Mr. Boyle's authority held a meeting with Mr. Matthews. The officer told Mr. Matthews that he "would do anything to prevent something from smearing the image of the agency." On September 23, 2005, Mr. Boyle's Chief of Staff held a meeting with Mr. Matthews to discuss his complaints about the Department. When Mr. Matthews returned to his desk, he found a handwritten note on his desk that read: "CANCER." Mr. Matthews reported the incident to his superiors, and Mr. Boyle opened an Internal Affairs investigation. However, the Internal Affairs Division lost the note and never completed the investigation. Mr. Matthews requested that Mr. Boyle open a criminal investigation, but Mr. Boyle failed to do so. Mr. Matthews began to fear for his physical safety and voluntarily elected to work out of the Department's Meriden building – where the other members of the Risk Management Unit were located – rather than out of the Middletown Headquarters.

Beginning in October 2005, the Department called in the New York State Police to conduct an independent investigation of the Internal Affairs Division. The New York State Police investigation lasted for approximately one year. In mid-October 2005, after the New York State Police investigation was under way, Mr. Matthews again contacted the Attorney General's Office to complain about the "CANCER" note and the Department's failure to sufficiently investigate the note.

In March 2006, an Internal Affairs officer designated Mr. Matthews as the target of an Internal Affairs investigation. Mr. Boyle assigned the officer who filed the complaint against Mr. Matthews to investigate the allegations against him. When Mr. Matthews requested that the

Department provide him with a copy of the complaint against him before his interview with the investigator, Mr. Boyle refused to do so.

As a member of the Risk Management, it was Mr. Matthews' duty to review other officers' use of force reports. In April 2006, Mr. Matthews made a complaint within the Department about another officer's improper use of force report and about the Department's failure to investigate that report. Mr. Matthews held a meeting with a superior officer regarding his complaint on April 26, 2006. At the meeting, the officer informed Mr. Matthews that Mr. Boyle had decided to move the Risk Management Unit from the Meriden building back to the Middletown Headquarters. The officer also informed Mr. Matthews that Mr. Boyle had decided that the Risk Management Unit would no longer be responsible for reviewing use of force reports.

On May 24, 2006, Mr. Matthews wrote a letter to Mr. Boyle complaining that he did not want to return to the Middletown Headquarters because he considered it a hostile work environment. On May 26, 2006, Mr. Matthews filed a grievance with his union regarding the transfer. Nevertheless, Mr. Matthews returned to the Middletown Headquarters as ordered on June 6, 2006. In May or June 2006, around the time of Mr. Matthews' return, Mr. Boyle permanently locked the door to the "Commissioner's Suite." The Suite housed Mr. Boyle's office as well as mailboxes for other officers, including Mr. Matthews. The Suite had previously been routinely left open for all officers to access. After May or June 2006, it was only accessible via keycard, and Mr. Matthews was not provided with a keycard to access the Suite.

On June 15, 2006, Mr. Matthews filed a retaliation complaint with the CHRO. On June 22, 2006, he wrote the Attorney General's Office requesting protection from the Department's management, including Mr. Boyle. He also filed a retaliation complaint with the Attorney General's

4

Office. During the Attorney General's investigation of the complaint, Mr. Boyle requested that the Department's internal legal advisor be permitted to sit in on witness interviews. The Attorney General's Office granted Mr. Boyle's request.

On November 21, 2006, Mr. Matthews' union wrote to Mr. Boyle requesting that Mr. Matthews be reassigned to a different work location outside the Middletown Headquarters. Mr. Boyle approved the request. However, Mr. Boyle did not immediately provide Mr. Matthews with an alternative workspace. Starting in November 2006, rather than work from the Middletown Headquarters, Mr. Boyle began working out of his police cruiser.

On December 4, 2006, the New York State Police issued a report based on its investigation of the Internal Affairs Division. The report concluded that the Internal Affairs Division had a pattern and practice of tolerating unethical and unlawful acts by Department officers and managers. On December 7, 2006, Mr. Matthews again wrote to the Attorney General's Office requesting protection from further retaliation. On January 12, 2007, Mr. Matthews' union wrote to Mr. Boyle to request that in light of the report, Mr. Matthews should not be transferred back to the Middletown Headquarters.

In February 2007, Mr. Matthews' union wrote to Mr. Boyle requesting that Mr. Matthews be placed on paid leave pending the completion of the Attorney General's investigation. On February 7, 2007, Mr. Boyle denied the request for paid leave. However, Mr. Boyle approved a transfer of Mr. Matthews out of the Middletown Headquarters and into Department office space in Hartford. The Hartford office space was being used at the time to conduct criminal interviews stemming from the New York State Police investigation into the Internal Affairs Division.

On February 20, 2007, Mr. Matthews' union wrote to Mr. Boyle requesting that Mr.

Matthews be assigned to office space at the Department's Meriden building until the criminal interviews at the Hartford office space were completed. On February 26, 2007, Mr. Boyle approved that request. Mr. Matthews was assigned to work from a mailroom that also housed a soda machine. Mr. Matthews was not allowed to use any of the common areas in the building, including the lunch room. On February 28, 2007, Mr. Boyle met with a superior officer and complained that the mailroom was not a sufficiently secure location for his work. Sometime in early 2007, Mr. Boyle referred Mr. Matthews to the Department's Employee Assistance Program for psychological counseling. Mr. Boyle left the Department on March 1, 2007 to begin federal government service.

Mr. Matthews filed his Complaint [doc. # 1] against the State of Connecticut, the Connecticut Department of Public Safety, and Mr. Boyle in the Connecticut Superior Court on February 4, 2010.[1] The complaint asserted a claim against the State of Connecticut and the Connecticut Department of Public Safety under Connecticut General Statutes § 31-59q. It also asserted a First Amendment retaliation claim against Mr. Boyle under 42 U.S.C. § 1983. Defendants filed a Notice of Removal [doc. # 1] in this Court on March 4, 2010. Defendants were able to remove the case to federal court because of Mr. Matthews' federal law claim against Mr. Boyle.

Defendants filed their first Motion to Dismiss [doc. # 15] for failure to state a claim pursuant to Rule 12(b)(6) on May 13, 2010. The Court denied that motion without prejudice to renewal because Mr. Matthews requested leave to file an amended complaint. *See* Order [doc. # 22] dated May 25, 2010. Mr. Matthews filed his Amended Complaint [doc. # 25] on June 21, 2010. The

---

[1] Mr. Matthews filed a complaint against other defendants premised on essentially the same set of facts nearly three years earlier. *See Matthews v. Blumenthal*, No. 3:07cv739 (WWE) (D. Conn. filed May 9, 2007).

Amended Complaint asserted the same claims as the original Complaint, but included a number of additional factual allegations. On July 8, 2010, the parties filed a Consent Motion [doc. # 27] to permit Mr. Matthews to amend his complaint a second time to make minor corrections to some of those additional factual allegations. The Court granted the motion, *see* Order [doc. # 28] dated July 8, 2010, and Mr. Matthews filed his Second Amended Complaint [doc. # 29] the same day.

Defendants filed their renewed Motion to Dismiss [doc. # 33] on July 14, 2010. In support of the motion, Defendants argue in support of their motion that the Eleventh Amendment bars Mr. Matthews' § 1983 claim insofar as it seeks damages against Mr. Boyle in his official capacity, and that the Second Amended Complaint fails to state a First Amendment retaliation claim against Mr. Boyle. Mr. Matthews filed an Opposition to the Motion to Dismiss [doc. # 34] on August 4, 2010. Defendants filed a Reply to Mr. Matthews' Opposition [doc. # 40] on August 30, 2010.

## II.

The standard of review this Court must apply on a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is a familiar one. In reviewing a complaint for failure to state a claim, the Court must "accept[] all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes*, 568 F.3d at 335. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "plausible grounds" requirement "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" supporting the plaintiff's claim for relief. *Twombly*, 550 U.S. at 556; *see also Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120-21 (2d

Cir. 2010) ("[W]e reject [the] contention that *Twombly* and *Iqbal* require the pleading of specific evidence or extra facts beyond what is needed to make the claim plausible.").

### III.

The only federal law claim in Mr. Matthews' Second Amended Complaint is his First Amendment retaliation claim against Mr. Boyle under § 1983. In opposition to the pending motion, Mr. Matthews concedes that he does not seek damages against Mr. Matthews in his official capacity. Nevertheless, the Court notes that the Eleventh Amendment prohibits Mr. Matthews from seeking damages from Mr. Boyle in his official capacity.

The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. Absent waiver by a State or valid abrogation by Congress, the Eleventh Amendment bars any damage action against a State in federal court. *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985). It also bars suits against state officials when they are sued for damages in their individual capacities. *See id.* Section 1983 does not abrogate Eleventh Amendment immunity. *See Quern v. Jordan*, 440 U.S. 332, 342 (1979). The Court is therefore precluded from awarding Mr. Matthews any damages against Mr. Boyle in his official capacity.

### IV.

In support of their motion to dismiss, Defendants argue that the statute of limitations bars Mr. Matthews' First Amendment retaliation claim against Mr. Boyle under § 1983 insofar as it seeks damages based on Mr. Boyle's conduct before February 4, 2007. In Connecticut, the statute of limitations applicable to claims under § 1983 is Connecticut's three-year statute of repose for tort

8

claims. *See* Conn. Gen. Stat. § 52-577; *Walter v. Jastremski*, 430 F.3d 560, 562 (2d Cir. 2005) (applying § 52-577 to a § 1983 claim); *Ormiston v. Nelson*, 117 F.3d 69, 71 (2d Cir. 1997) (holding that § 1983 claims are governed by the state statute of limitations for personal-injury actions); *Ruston v. World Wrestling Entm't*, No. 3:07cv1650 (MRK), 2008 WL 824217, at *2 (D. Conn. Mar. 25, 2008) (applying the three year statute of limitations to a § 1983 claim). Both parties agree that § 52-577 is the applicable statute of limitations in this case.

Under § 52-577 of the Connecticut General Statutes, the relevant dates are the date of the defendant's alleged wrongful conduct and the date on which the plaintiff's action was originally filed. *See Rosenfield v. Rogin, Nassau, Caplan, Lassman & Hirtle, LLC*, 69 Conn. App. 151, 159 (2002). Mr. Matthews filed his original Complaint in the Superior Court on February 4, 2010. Thus, unless an exception to the ordinary statute of limitations applies here, the Court agrees with Defendants that Mr. Matthews' § 1983 claim is time-barred with respect to any actions before February 4, 2007.

Mr. Matthews argues in opposition to the pending motion that Mr. Boyle's actions as alleged in the Second Amended Complaint constituted a continuing violation of federal law. *See Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 713 (2d Cir. 1996). The continuing violation doctrine – which was originally developed in the context of Title VII claims – is an "exception to the normal know-or-should-have known accrual date" if there is "evidence of an ongoing . . . policy or practice." *Id.* The continuing violation doctrine applies to ongoing circumstances that combine to form a single violation that "cannot be said to occur on any particular day." *National R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114-15 (2002); *cf. OBG Technical Servs., Inc. v. Northrop Grumman Space & Mission Sys. Corp.*, 503 F. Supp. 2d 490, 510-11 (D. Conn. 2007)

9

(discussing the analogous continuing course of conduct doctrine). Discrete incidents that are not part of an ongoing policy or practice are not continuing violations. *See Washington v. Cnty. of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004).

If the continuing violation doctrine applies to Mr. Matthews' First Amendment retaliation claim under § 1983, that claim is not time-barred with respect to *any* of his factual allegations so long as he can allege one act in furtherance of the continuing violation that occurred within the three-year limitations period. *See Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999). Neither the Supreme Court nor the Second Circuit has had occasion to consider whether the continuing violation doctrine can be applied to a First Amendment relation claim brought under § 1983. However, the Second Circuit recently held that the continuing violation doctrine can apply to an Eighth Amendment deliberate indifference claim brought under § 1983. *See Shomo v. City of New York*, 579 F.3d 176, 181-82 (2d Cir. 2009). The Court sees no reason why the continuing violation doctrine would apply to an Eighth Amendment deliberate indifference claim under § 1983, but not to other constitutional claims under § 1983, including First Amendment retaliation claims.

Assuming, however, that the continuing violation doctrine can be applied to First Amendment retaliation claims under § 1983, the Court concludes that Mr. Matthews has not alleged a continuing First Amendment violation here. Instead, Mr. Matthews has alleged numerous *discrete* First Amendment violations by Mr. Boyle. *See Washington*, 373 F.3d at 318. In a First Amendment retaliation claim, the federal law violation is an adverse employment action causally related to the employment's exercise of his right to free speech. *See Morris v. Lindau*, 196 F.3d 102, 110-11 (2d Cir. 1999). In the First Amendment retaliation context, an adverse employment action is any action that might well dissuade a reasonable worker from exercising his right to free speech. *See Zelnik*

10

*v. Fashion Inst. of Tech.*, 464 F.3d 217, 227 (2d Cir. 2006). According to the Second Amended Complaint, before February 4, 2007, Mr. Boyle : (1) forcibly transferred Mr. Matthews from the Internal Affairs Division to the Risk Management Unit, a different unit with significantly different work responsibilities; (2) issued an untruthful negative report about Mr. Matthews' performance as a member of the Internal Affairs Division; (3) failed to investigate a threatening note to Mr. Matthews apparently sent by another officer in the Department; (4) initiated an Internal Affairs investigation of Mr. Matthews; (5) forced Mr. Matthews to return to the Middletown Headquarters even though he had left it based on fears for his safety; (6) excluded Mr. Matthews from a common space at the Middletown headquarters used by other officers; and (7) ordered Mr. Matthews transferred out of the Middletown headquarters without providing him with any alternative workspace. Any one of those seven allegations could have formed the basis for a timely retaliation claim under § 1983 against Mr. Boyle, but Mr. Matthews sat on his rights.

Mr. Matthews failure to file a timely retaliation claim under § 1983 based on any one of those alleged discrete retaliatory actions is particularly surprising in light of the fact that Mr. Matthews first threatened to file retaliation claims against Mr. Boyle and others as early as June 2005, and that he actually filed retaliation claims with both the CHRO and the Attorney General's Office in June 2006. Mr. Matthews' inaction is even more surprising in light of the fact that he filed timely § 1983 claims in federal court against a number of *other* individuals based on essentially the same set of facts in 2007, nearly three years before he filed this action. *See Matthews v. Blumenthal*, No. 3:07cv739 (WWE) (D. Conn. filed May 9, 2007).

The Court is not at all persuaded by Mr. Matthews' repeated invocation of the phrase "pattern and practice" in opposition to the pending motion. *See, e.g.*, Pl.'s Opp. to Mot. to Dismiss

11

[doc. # 34] at 17. The Second Circuit rejected the precise argument that Mr. Matthews makes here in *Washington v. County of Rockland*, where it held that a "series of separate acts [cannot] be characterized as an ongoing policy . . . sufficient to toll the applicable statute of limitation." 373 F.3d at 318. The Court therefore concludes that Mr. Boyle is time-barred from seeking damages from Mr. Boyle based on any acts that occurred before February 4, 2007.

**V.**

Mr. Matthews' Second Amended Complaint alleges only four acts by Mr. Boyle after February 4, 2007. After February 4, 2007, Mr. Boyle: (1) denied Mr. Matthews' union's request to place him on paid leave; (2) approved a request to transfer Mr. Matthews out of the Middletown Headquarters; (3) approved a request to transfer Mr. Matthews to the Department's Meriden building; and (4) referred Mr. Matthews to the Department's Employee Assistance Program for psychological counseling.[2] Although Mr. Matthews' Second Amended Complaint refers to a number of other events that occurred after February 4, 2007 – namely, that Mr. Matthews was required to work out of an unsecured mailroom and excluded from common areas at the Meriden building – Mr. Matthews nowhere alleges that Mr. Boyle had personal knowledge of those events or was in any fashion personally responsible for those events. *See Richardson v. Goord*, 347 F.3d 431 (2d Cir. 2003) (recognizing that supervisor liability in a § 1983 action depends on a showing of personal responsibility). The Court concludes that Mr. Matthews cannot seek to hold Mr. Boyle responsible for those events without alleging that he played some personal role in those events. *See Iqbal*, 129 S. Ct. at 1952.

---

[2] Mr. Matthews' Second Amended Complaint alleges that the referral occurred sometime in early 2007. Construing that allegation in the light most favorable to Mr. Matthews, the Court assumes that it occurred after, rather than before, February 4, 2007.

The Court also concludes that as a matter of law, none of Mr. Boyle's alleged conduct after February 4, 2007 could support Mr. Matthews' § 1983 claim. To prevail on a First Amendment retaliation claim under § 1983, a plaintiff must show: (1) that he spoke on a matter of public concern; (2) that he suffered an adverse employment action; and (3) that there was a causal connection between his speech and the adverse employment action. *See Singh v. New York*, 524 F.3d 361 (2d Cir. 2008). As discussed above, an adverse employment action is any action that might dissuade a reasonable worker from exercising his right to free speech. *See Kaytor*, 609 F.3d at 555. The Court assumes without deciding that Mr. Matthews spoke on matters of public concern.[3] However, none of Mr. Boyle's alleged actions after February 4, 2007 constituted an adverse employment action.

Mr. Boyle's first alleged action – denying the union's request to have Mr. Matthews placed on paid leave – was not an adverse employment action. Neither the Supreme Court nor the Second Circuit has ever had occasion to consider whether an employer's *denial* of a request for paid leave can constitute an adverse employment action in the First Amendment retaliation context. The argument is somewhat unusual. In this Court's experience, it is more typical for employees to argue that *requiring* an employee to take paid leave constitutes an adverse employment action. *See, e.g.*, *Krukenkamp v. State Univ. of N.Y. at Stony Brook*, No. 09-4933-cv, 2010 WL 3894970, at *1 (2d Cir. Oct. 6, 2010).

---

[3] The Court notes that Mr. Matthews almost certainly did not engage in constitutionally protected speech when he made his initial complaints about officer misconduct and conduct to his superiors in the Department. *See Garcetti v. Ceballos*, 547 U.S. 410, 426 (2006) ("We reject . . . the notion that the First Amendment shields from discipline the expressions employees make pursuant to their professional duties."). However, because Mr. Matthews later made retaliation allegations to the Attorney General's Office and the CHRO, the Court concludes that *Garcetti* does not necessarily control the outcome here.

13

The Court nevertheless concludes that Mr. Boyle's denial of the union's request did not constitute an adverse employment action for three reasons. First, in an unpublished summary order, the Second Circuit has held that denial of a request for a leave of absence does not constitute an adverse employment action in the equal protection context. *See Williams v. N.Y. City Housing Auth.*, 335 Fed. App'x 108, 110 (2d Cir. 2009). Although the phrase "adverse employment action" has a somewhat different meaning in that context – specifically, "a materially adverse change in the terms and conditions of . . . employment," *Galabya v. N.Y. City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2010) – the Court still finds the Second Circuit's conclusion instructive. Second, at least one other district court within the Second Circuit has rejected the argument that denial of a request for leave can constitute an adverse employment action in the First Amendment retaliation context. *See Casale v. Reo*, 522 F. Supp. 2d 420, 427 (N.D.N.Y. 2007) ("[N]o reasonable jury could find that refusing to recommend a third consecutive year of leave would dissuade a reasonable employee from engaging in protected speech."). Third, even assuming there are situations in which an employee might, for example, be entitled under a contract to take leave at will – and in which an employer *could* be forced to face a Hobson's choice between granting a request for leave and facing civil liability for retaliation – Mr. Matthews does not allege that he was entitled to take leave at will.

Mr. Boyle's next two alleged actions – approving the union's request to transfer Mr. Matthews out of the Middletown Headquarters, and, after Mr. Matthews' union objected to the Hartford location, approving the union's request for a transfer to the Meriden office – were actually actions taken for Mr. Matthew' *benefit*. Those actions were taken only at the request of Mr. Matthews' union. The Court finds it inconceivable that an employer's decision to grant an employee a benefit at the employee's own request could ever dissuade a reasonable worker from exercising

14

his First Amendment rights. *See Kaytor*, 609 F.3d at 555.

Mr. Matthews' fourth alleged action – referring Mr. Matthews to the Department's Employee Assistance Program for psychological counseling – also did not constitute an adverse employment action. Although no Supreme Court or Second Circuit precedent is directly on point, the Court believes that no reasonable jury could conclude that a supervisor's mere referral of an employee to an internal counseling service would dissuade a reasonable worker from exercising his right to free speech. *See id.*; *cf. Breaux v. City of Garland*, 205 F.3d 150 (5th Cir. 2000) (holding that requiring an employee to undergo a single psychological exam was not an adverse employment action in the First Amendment retaliation context). The result could conceivably be different if Mr. Boyle had forced Mr. Matthews to undergo psychological treatment, or had publicized his decision to refer Mr. Matthews for psychological counseling to others in the Department. However, Mr. Matthews makes no such allegations in his Second Amended Complaint.

## VI.

In sum, the Court concludes that the Eleventh Amendment bars Mr. Matthews from seeking damages against Mr. Boyle in his official capacity; that Mr. Matthews' claim against Mr. Boyle is time-barred insofar as it seeks damages based on acts that occurred before February 4, 2007; and that none of Mr. Boyle's alleged conduct after February 4, 2007 amounted to an adverse employment action. Because the only federal law claim in Mr. Matthews' Second Amended Complaint fails as a matter of law, the Court declines to exercise supplemental jurisdiction over Mr. Matthews' state law claim against the State of Connecticut and the Connecticut Department of Public Safety. *See Castellano v. Board of Trustees of Police Officers' Variable Supplements Fund*, 937 F.2d 752, 758-59 (2d Cir. 1991). Mr. Matthews may pursue that claim in state court if he wishes to do so.

Defendants' Motion to Dismiss [doc. # 33] is therefore GRANTED.  **The Clerk of the Court is directed to enter judgment for Mr. Boyle on the § 1983 claim and to close this file.**

IT IS SO ORDERED.

/s/      Mark R. Kravitz
United States District Judge

**Dated at New Haven, Connecticut: October 8, 2010**.